O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SATA Gmbh & CO. KG,                    )  Case No. CV 20-02131 DDP (JPRx)
                                       )
                  Plaintiff,           )
                                       )  **ORDER DENYING DEFENDANT'S MOTION
        v.                             )  TO DISMISS**
                                       )
CENTRAL PURCHASING LLC,                )  [23, 30]
                                       )
                  Defendants.          )
                                       )

     Presently before the court is Defendant Central Purchasing,
LLC ("Harbor Freight")'s Motion to Dismiss.  Having considered the
positions of the parties and heard oral argument, the court denies
the motion and adopts the following Order.

**I.   Background**

     Plaintiff SATA GmbH & Co. KG ("SATA") manufactures, among
other things, paint spray guns.  (Complaint ¶ 8.)  SATA also owns a
design patent, U.S. D552,213 ("the Patent") in an ornamental design
for a paint spray gun.  (Id. ¶ 25.)  Harbor Freight also sells
paint spray guns.  (Id.  ¶¶ 14, 16.)

     In 1999, SATA brought suit against Harbor Freight, alleging
trade dress infringement and associated claims related to Harbor
Freight's sale of paint spray guns.  (Id. ¶ 14.)  In 2000, the

1  parties settled all claims and entered into a Settlement Agreement

2  ("the Agreement").  (Id.)  Under the Agreement, Harbor Freight

3  agreed "that it shall make no reference to SATA, SATA trademarks,

4  or SATA products, in any advertisements, product descriptions, or

5  any other materials generated in connections with the sale or

6  promotion of [Harbor Freight] paint spray guns or parts therefore."

7  (Compl., Ex. A ¶ 14 ("Paragraph 14").)  Nevertheless, SATA alleges,

8  Harbor Freight's advertisements mention SATA by name, in some cases

9  alongside images of SATA paint spray guns and in comparison to

10  Harbor Freight products.  (Compl. ¶ 16, Ex. B.)  SATA further

11  alleges that Harbor Freight's "Black Widow" paint spray guns

12  infringe upon the Patent.

13      Harbor Freight now moves to dismiss the two causes of action

14  in the Complaint: breach of contract and design patent

15  infringement.

16  **II.  Legal Standard**

17      A complaint will survive a motion to dismiss when it

18  "contain[s] sufficient factual matter, accepted as true, to state a

19  claim to relief that is plausible on its face." Ashcroft v. Iqbal,

20  556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550

21  U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a

22  court must "accept as true all allegations of material fact and

23  must construe those facts in the light most favorable to the

24  plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

25  Although a complaint need not include "detailed factual

26  allegations," it must offer "more than an unadorned,

27  the-defendant-unlawfully-harmed-me accusation." Iqbal,556 U.S. at

28  678.  Conclusory allegations or allegations that are no more than a

2

statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

A.   Breach of Contract

Harbor Freight does not dispute that some of its advertisements contain side-by-side comparisons of Harbor Freight products and competitors' products, including SATA's spray guns. (Motion at 3:5-11.)  Harbor Freight contends, however, that any provision in the Agreement barring such advertising is unenforceable as contrary to public policy.  (Mot. at 7:25-26.)

In California, a contract is unlawful and unenforceable if it is "[c]ontrary to an express provision of law; [c]ontrary to the policy of express law, though not expressly prohibited; or [o]therwise contrary to good morals." Kashani v. Tsann Kuen China Enter. Co., 118 Cal. App. 4th 531, 541 (2004) (quoting Cal. Civil

1   Code § 1667).  Although not entirely clear, Harbor Freight appears

2   to argue that Paragraph 14 is contrary to the policy of express

3   law, particularly the Sherman Antitrust Act, 15 U.S.C. § 1, and the

4   FTC Act, 15 U.S.C. § 45(a)(1).

5       Section 1 of the Sherman Antitrust Act prohibits contracts,

6   combinations, and conspiracies that unreasonably restrain trade.[1]

7   15 U.S.C. § 1; Brantley v. NBC Universal, Inc., 675 F.3d 1192, 1197

8   (9th Cir. 2012).  Some restraints, typically horizontal agreements

9   between competitors, are unreasonable *per se*.  Ohio v. Am. Express

10  Co., 138 S. Ct. 2274, 2284 (2018).  All other restraints must be

11  analyzed under the "rule of reason."  Id.; Brantley, 675 F.3d at

12  1197.  To state a Section 1 claim under the rule of reason, a

13  plaintiff must allege (1) an agreement, conspiracy, or combination

14  between two or more entities that (2) the entities intend to harm

15  or restrain trade and (3) actually injures competition with (4)

16  resulting "antitrust injury" to the plaintiff.  Brantley, 675 F.3d

17  at 1197.; Auto. Sound Inc. v. Audiovox Elec. Corp., No. 12-762,

18  2012 WL 12892938, at *3 (C.D. Cal. Dec. 3, 2012).

19      Here, Harbor Freight's opening brief does no more than assert

20  that Paragraph 14 violates antitrust law, with no citation to

21  authority or explanation how a voluntary agreement not to refer to

22  a competitor's trademarks in advertising constitutes an illegal

23  restraint of trade, whether under the rule of reason or *per se*.

24  (Opp. at 8: 10-13.)  In its reply, Harbor Freight asserts that

25

26      [1] Federal cases interpreting the Sherman Act are also

27  applicable to claims under California's Cartwright Act.  See, e.g.

    Pecover v. Elecs. Arts Inc., 633 F. Supp. 2d 976, 984 (N.D. Cal.

28  2009); Marin Cty. Bd. of Realtors, Inc. v. Palsson, 16 Cal. 3d 920,

    925 (1976).

Paragraph 14 constitutes a *per se* unreasonable restraint of trade,
but cites no authority concerning an agreement not to conduct
comparative advertising.  Instead, Harbor Freight relies upon
several out-of-context quotations from Sherman Act cases that are
simply inapt.  See, e.g., Nat'l Soc. of Prof'l Engineers v. United
States, 435 U.S. 679 (1978) (discussing professional association's
ban on competitive bidding); Blackburn v. Sweeney, 53 F.3d 825, 828
(7th Cir. 1995) (discussing illegal agreement to allocate markets
through reciprocal bans on all advertising within certain
geographic areas).  Nor does Harbor Freight so much as attempt to
show that Paragraph 14 constitutes an unreasonable restraint of
trade under the rule of reason.  Harbor Freight has not, therefore,
demonstrated that Paragraph 14 violates the Sherman Act.

With respect to the FTC Act, Harbor Freight relies upon the
FTC's decision in In the Matter of 1-800 Contacts, Inc., Trade Reg.
Rep. P 80586.  There, various settlement agreements, as part of an
effort to prevent one party's advertisements from appearing in
response to a user's search for a competitor, required sellers of
contact lenses to refrain from using competitors' trademarks as
online advertising keywords.  The Commission concluded, in a
lengthy decision following extensive factfinding, that the
advertising restrictions in the settlement agreement made it more
difficult for consumers to compare competing online sellers of
contact lenses, and constituted unfair competition for purposes of
the FTC Act.[2]

---

[2] Further, as Harbor Freight acknowledges, the FTC's decision
in 1-800 Contacts is presently on appeal to the Second Circuit.

1    FTC decisions, although not binding upon this Court, are

2    entitled to great weight, as "the Commission has accumulated

3    extensive experience and is therefore generally in a better

4    position than the courts to determine when a practice is deceptive

5    within the meaning of the FTCA."[3]  Simeon Mgmt. Corp. v. F. T. C.,

6    579 F.2d 1137, 1145 (9th Cir. 1978).  Here, however, at this stage

7    of proceedings, and without the extensive expert testimony and

8    other evidence of the sort presented to the Commission in 1-800

9    Contacts, there is no basis upon which this Court could determine

10   that Paragraph 14 has anticompetitive effects similar to those

11   present in 1-800 Contacts.[4]

12       The court acknowledges that the FTC has encouraged the use of

13   some types of comparative advertising and recognized such

14   advertising as "a source of important information to consumers

15   [that] assists them in making rational purchase decisions."  16

16   C.F.R. § 14.15(c).  The regulation, in its entirety, states:

17          (a) Introduction. The Commission's staff has conducted
            an investigation of industry trade associations and the
18          advertising media regarding their comparative advertising
            policies. In the course of this investigation, numerous
19          industry codes, statements of policy, interpretations and
            standards were examined. Many of the industry codes and
20          standards contain language that could be interpreted as
            discouraging the use of comparative advertising. This
21          Policy Statement enunciates the Commission's position that

22   _____

23       [3] The Simeon Management court made this observation in the
     context of a direct appeal of an FTC order. Simeon Mgmt. Corp.,
24   579 F.2d at 1140; see also 15 U.S.C. § 45(c), (d).

25       [4] Indeed, at this stage of proceedings, the agreements at
     issue in 1-800 Contacts seem distinguishable from the Agreement
26   here.  Although the latter limits the content of certain Harbor
     Freight ads, the former appear, to some extent, to have operated to
27   keep the very existence of 1-800 Contacts' competitors hidden from
     consumers, almost as if those competitors had been barred from
28   listing their services in the relevant section of a phone
     directory's yellow pages.

industry self-regulation should not restrain the use by advertisers of truthful comparative advertising.

(b) Policy Statement. The Federal Trade Commission has determined that it would be of benefit to advertisers, advertising agencies, broadcasters, and self-regulation entities to restate its current policy concerning comparative advertising. Commission policy in the area of comparative advertising encourages the naming of, or reference to competitors, but requires clarity, and, if necessary, disclosure to avoid deception of the consumer. Additionally, the use of truthful comparative advertising should not be restrained by broadcasters or self-regulation entities.

(c) The Commission has supported the use of brand comparisons where the bases of comparison are clearly identified. Comparative advertising, when truthful and nondeceptive, is a source of important information to consumers and assists them in making rational purchase decisions. Comparative advertising encourages product improvement and innovation, and can lead to lower prices in the marketplace. For these reasons, the Commission will continue to scrutinize carefully restraints upon its use.

(1) Disparagement. Some industry codes which prohibit practices such as "disparagement," "disparagement of competitors," "improper disparagement," "unfairly attaching," "discrediting," may operate as a restriction on comparative advertising. The Commission has previously held that disparaging advertising is permissible so long as it is truthful and not deceptive. In Carter Products, Inc., 60 F.T.C. 782, modified, 323 F.2d 523 (5th Cir. 1963), the Commission narrowed an order recommended by the hearing examiner which would have prohibited respondents from disparaging competing products through the use of false or misleading pictures, depictions, or demonstrations, "or otherwise" disparaging such products. In explaining why it eliminated "or otherwise" from the final order, the Commission observed that the phrase would have prevented: respondents from making truthful and non-deceptive statements that a product has certain desirable properties or qualities which a competing product or products do not possess. Such a comparison may have the effect of disparaging the competing product, but we know of no rule of law which prevents a seller from honestly informing the public of the advantages of its products as opposed to those of competing products. 60 F.T.C. at 796.

Industry codes which restrain comparative advertising in this manner are subject to challenge by the Federal Trade Commission.

(2) Substantiation. On occasion, a higher standard of substantiation by advertisers using comparative advertising has been required by self-regulation entities. The Commission evaluates comparative advertising in the same manner as it evaluates all other advertising techniques. The ultimate question is whether or not the advertising has a tendency or capacity to be false or deceptive. This is a

> factual issue to be determined on a case-by-case basis. However, industry codes and interpretations that impose a higher standard of substantiation for comparative claims than for unilateral claims are inappropriate and should be revised.

16 C.F.R. § 14.15

Notably, the regulation does not preclude prohibitions on comparative advertising, or even suggest that all comparative advertising is pro-competitive.  Rather, the regulation emphasizes the value of truthful, non-deceptive comparative advertising. Where, however, a party engages in other types of comparative advertising, or other allegedly wrongful or misleading conduct, voluntary restrictions on subsequent advertising might be beneficial, or at least innocuous.  Furthermore, the regulation's careful scrutinization of restraints on the use of comparative advertising focuses not on specific agreements between direct competitors, but rather on broadcasters and self-regulatory entities.  In other words, the regulation's emphasis on broad, industry-wide codes of silence has little bearing on particularized agreements between two competitors, such as the Agreement here.

For these reasons, and in the absence of any authority supporting Harbor Freight's argument, this court cannot conclude that, as a matter of law, Paragraph 14 violates the FTC Act, or any public policy favoring comparative advertising.

B.   Patent Infringement

"[A]" design patent, unlike a utility patent, limits protection to the ornamental design of the article."  Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010)  In determining whether an accused product infringes a patented design,

courts apply the "ordinary observer" test, which asks whether "in
the eye of the ordinary observer, giving such attention as a
purchaser usually gives, two designs are substantially the same . .
., inducing him to purchase one supposing it to be the other . .
.." Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed.
Cir. 2013) (citing Gorham Co. v. White, 81 U.S. (14 Wall.) 511, 528
(1871)). "[I]nfringement of a design patent is based on the design
as a whole, not on any 'points of novelty.'" Id. (citing Egyptian
Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en
banc)). Differences must be "evaluated in the context of the
claimed design as a whole, and not in the context of separate
elements in isolation." Ethicon Endo-Surgery, Inc. v. Covidien,
Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing Richardson, 597
F.3d at 1295).

Generally, a patent plaintiff need only plead, in addition to
basic information such as the name of the defendant and the patent
owned by the plaintiff, "the means by which the defendant allegedly
infringes" and "the sections of the patent law invoked." Hall, 705
F.3d at 1362. Infringement itself is a question of fact. Catalina
Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1287 (Fed. Cir.
2002); see also Richardson, 597 F.3d at 1295; OddzOn Products, Inc.
v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997).
Nevertheless, "[i]n some instances, the claimed design and the
accused design will be sufficiently distinct that it will be clear
without more that the patentee has not met its burden of proving
the two designs would appear 'substantially the same' to the
ordinary observer." Egyptian Goddess, 543 F.3d at 678. Thus, at
the pleading stage, dismissal for lack of infringement is only

appropriate if "the claimed design and accused product are so
plainly dissimilar that it is implausible that an ordinary observer
would confuse them." <u>Enerlites, Inc. v. Century Prod. Inc.</u>, No.
SACV18839JVSKESX, 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018)
(collecting cases).

Harbor Freight relies heavily upon <u>Egyptian Goddess</u> to argue
that the claimed and accused designs here are not substantially
similar.  Harbor Freight's argument focuses on the fact that the
test for infringement is applied "through the eyes of an observer
familiar with the prior art." <u>Egyptian Goddess</u>, 543 F.3d at 677.
Indeed, an "ordinary observer" analysis "will benefit from a
comparison of the claimed and accused designs with the prior art .
. ." <u>Id.</u> at 678.  Such a comparison, however, is only necessary
and applicable "[i]n [] instances[] when the claimed and accused
designs <u>are not plainly dissimilar.</u>" <u>Id.</u> (emphasis added).  In
other words, "the 'ordinary observer' test involves a two tiered
approach.  The threshold question is whether, without review of the
prior art, the claimed and accused designs are sufficiently
similar[.] [][I]f so, the next level entail[s] a comparison to the
prior art." <u>Performance Designed Prod. LLC v. Mad Catz, Inc.</u>, No.
16CV629-GPC(RBB), 2016 WL 3552063, at *2 (S.D. Cal. June 29, 2016).
Here, Harbor Freight conflates these two tiers, arguing that a
comparison of the claimed design to the prior art reveals that the
claimed and accused designs are dissimilar.  This is not the proper
analysis.  <u>See</u> <u>Ethicon</u>, 796 F.3d at 1337 ("C]omparing the claimed

1 │ and accused designs with the prior art is beneficial only when the

2 │ claimed and accused designs are not plainly dissimilar.").[5]

3 │     Looking solely at the accused and claimed designs, this Court

4 │ cannot conclude, nor does Harbor Freight argue, that the two

5 │ designs are plainly dissimilar.  Dismissal at the pleading stage

6 │ is, therefore, not appropriate.[6]

7 │ **IV.  Conclusion**

8 │     For the reasons stated above, Harbor Freight's Motion to

9 │ Dismiss is DENIED.

14 │ IT IS SO ORDERED.

17 │ Dated:   March 12,2021

DEAN D. PREGERSON
United States District Judge

---

[5] The _Ethicon_ court, like the district court, found a lack of substantial similarity on summary judgment, after claim construction.  _Ethicon_, 796 F.3d at 1335.

[6] Although the _Performance Digital Products_ court did dismiss at the pleading stage, it (1) recognized that such dismissal was "not necessarily common," and (2) only conducted a comparative prior art analysis in the alternative, after having already concluded that the two designs at issue were plainly dissimilar. _Performance Designed Prod._, 2016 WL 3552063, at *5-7 (quoting _MSA Products, Inc. v. Nifty Home Products, Inc._, No. 11cv5261 (WJM), 2012 WL 2132464, *3-4 (D.N.J. June 12, 2012)).  The latter determination clearly supported dismissal at the pleading stage. _Egyptian Goddess_, 543 F.3d at 678; _Enerlites_, 2018 WL 4859947, at *3.