O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SATA Gmbh & CO. KG, | ) | Case No. CV 20-02131 DDP (JPRx) |
| Plaintiff, | ) ) ) | **ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM** |
| v. | ) ) | |
| CENTRAL PURCHASING LLC, | ) ) | [Dkt 67, 68] |
| Defendants. | ) ) | |

Presently before the court is Plaintiff SATA GmbH & Co. KG ("SATA")'s Motion to Dismiss Counterclaim. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

**I. Background**

Plaintiff SATA GmbH & Co. KG ("SATA") manufactures, among other things, paint spray guns. (First Amended Complaint ("FAC") ¶ 8.) SATA also owns a design patent, U.S. D552,213 ("the Patent"), in an ornamental design for a paint spray gun. (Id. ¶ 23.) Harbor Freight also sells paint spray guns. (Id. ¶¶ 14, 16.) In 1999, SATA brought suit against Harbor Freight, alleging trade dress infringement and associated claims related to Harbor Freight's sale of paint spray guns. (Id. ¶ 14.) In 2000, the

parties settled all claims and entered into a Settlement Agreement ("the Agreement"). (Id.) The Agreement included a confidentiality provision, under which both parties agreed not to disclose the Agreement, or its terms, to third parties.[1] (FAC, Ex. A ¶ 18.)

In 2020, SATA filed the instant action for patent infringement and breach of the 2000 Agreement. SATA filed the Agreement on the publicly-accessible court docket as Exhibit A to SATA's original Complaint. (Dkt. 1.) The next day, counsel for Harbor Freight contacted SATA's counsel, contending that SATA's public filing of the Agreement constituted breach of the Agreement's confidentiality provision, and requesting that SATA take remedial steps to shield the Agreement from public view. (Declaration of Dakota S. Speas in Opposition to Motion to Dismiss Counterclaim, Ex. 1.) SATA's counsel replied that the Agreement was "accidentally filed in open court," and represented that SATA was taking steps to "rectify" the situation. (Id.) That same day, SATA filed an emergency motion to seal the Complaint, arguing that the existence of the confidentiality provision within the Agreement constituted good cause to seal the Complaint. (Dkt. 10.) This Court granted SATA's emergency motion the following day. (Dkt. 6, 10.)

Harbor Freight alleges that, notwithstanding the eventual sealing of SATA's Complaint, the confidential Agreement was publicly accessible through the court's electronic system and through third party websites. (Counterclaim ¶ 9.) Although Harbor

---

[1] The Agreement recognized that SATA might need to disclose information about the Agreement "in connection with its ongoing policing efforts," and allowed SATA to do so, provided that any third party also agreed to treat information about the Agreement as confidential.

2

Freight requested that SATA facilitate the removal of the Agreement from third party services, SATA allegedly declined to respond to that request or to make any remedial efforts to contact third-party services. (Id. ¶¶ 11-12.) Harbor Freight therefore undertook its own efforts to contact third-party websites and ensure that Agreement was no longer publicly accessible. (Id. ¶¶ 12, 14.) Harbor Freight later filed a counterclaim against SATA in the instant action, alleging that SATA violated the confidentiality provision of, and therefore breached, the Agreement by filing the Agreement publicly. SATA now moves to dismiss Harbor Freight's breach of contract counterclaim.

## II.  Legal Standard

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a

3

claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   Mitigation damages

SATA contends that Harbor Freight's breach of contract counterclaim does not adequately allege damages resulting from SATA's public filing of the confidential Agreement. Damages are, of course, "[a]n essential element of a claim for breach of contract." St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co., 101 Cal. App. 4th 1038, 1060 (2002). The counterclaim alleges that Harbor Freight "expended resources to have its attorneys mitigate harm by SATA's breach by interacting with numerous third parties to get the publicly-filed materials removed from publicly-accessible platforms." (Counterclaim ¶ 14.) The counterclaim further alleges that members of the public, including Harbor Freight's competitors, were able to learn the terms of the confidential Agreement. (Counterclaim ¶¶ 9-14.)

It is well-settled "that an injured party who makes a reasonable attempt to mitigate his damages is allowed to recover

4

the cost of such reasonable mitigation effort as damages from the party who breached the contract." Brandon & Tibbs v. George Kevorkian Acct. Corp., 226 Cal. App. 3d 442, 462 (1990); see also Barnes v. Berendes, 139 Cal. 32, 36 (1903). Nevertheless, SATA contends that Harbor Freight cannot recover its mitigation expenses because those expenses were incurred in the form of attorney's fees. As an initial matter, the counterclaim does not characterize the expenses as "attorney's fees," but rather alleges that attorneys "interacted" with third-party services to ensure that the confidential Agreement was removed from publicly-accessible platforms. In any event, SATA reads too much into cases stating, in the insurance context, that attorney's fees do not constitute "damages" for the purpose of triggering insurance coverage. See, e.g., Travelers Prop. Cas. Co. of Am. v. KFx Med. Corp., 637 F. App'x 989, 991 (9th Cir. 2016) (unpublished disposition); Great Am. E & S Ins. Co. v. Theos Med. Sys., Inc., 357 F. Supp. 3d 953, 967 (N.D. Cal. 2019) ("[Defendant] does not appear to dispute that attorneys' fees and sanctions are not covered as 'damages' under the [insurance] policies. The Court finds that under California law, attorneys' fees do not constitute covered 'damages.'" (emphasis added) (internal citation omitted); Combs v. State Farm Fire & Cas. Co., 143 Cal. App. 4th 1338, 1345 (2006) ("Attorney fee awards may not normally be considered as 'damages' in that they do not compensate claimants for the injury for which they brought suit.") (emphasis added); Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch. etc. Auth., 31 Cal. App. 4th 617, 631 (1994). As the Cutler-Orosi court, looking to analogous civil rights cases involving fee-shifting provisions, explained, "attorney's fees,"

i.e. those incurred litigating a matter, are best understood as part of litigation costs, rather than as "'damages' as the term is used in its ordinary and popular sense, that is, compensation paid to a party for the loss or detriment suffered because of the wrongful act of another." Cutler-Orosi, 31 Cal. App. 4th at 631-32.

Here, however, the damages sought are intended to compensate Harbor Freight for the expenses it incurred as a result of SATA's wrongful publication of the confidential Agreement. In similar circumstances, at least one court has considered "legal expenses" as recoverable mitigation damages. See USA Wheel & Tire Outlet #£2, Inc. v. United Parcel Serv. Inc., No. SACV 13-0403-DOC MLG, 2014 WL 197733, at *5 (C.D. Cal. Jan. 14, 2014). Here, moreover, Harbor Freight does not seek "attorney's fees" in the traditional, litigation cost-related sense of the term. Rather, Harbor Freight seeks to recover for remedial efforts made, with third parties and outside the litigation context, by individuals who happen to be attorneys. SATA has not put forth, nor can this Court discern, any principled reason why these same mitigation efforts would constitute recoverable damages if undertaken by non-lawyers, yet cannot qualify as "damages" here because attorneys played some role.[2]

B.   Propriety of Sealing

SATA argues, in the alternative, that the Counterclaim must be dismissed because the confidential Settlement Agreement "does not

---

[2] Whether these attorney-led efforts were a reasonable expenditure of Harbor Freight's resources is an entirely different question, not presently before the court.

6

meet the criteria for sealing," and therefore SATA's publication of the Agreement "cannot constitute a breach." (Motion at 12.) Even putting aside the fact that it was SATA, not Harbor Freight, that requested the belated, emergency sealing of the Agreement in this case, SATA's argument is a non-sequitur, and conflates the distinct issues of confidentiality and sealing.

Harbor Freight does not appear to dispute that "there is a strong presumption of public access" to court records, nor that many records may only be sealed for "compelling reasons." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006).[3] Courts must balance the public's interest in access against a private party's interest in secrecy. Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1097 (9th Cir. 2016). Examples of compelling reasons warranting sealing include preventing the circulation of libelous statements or "sources of business information that might harm a litigant's competitive standing." Id. (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)). Without divulging the particulars of the Agreement, the court is satisfied that the business information therein, which the parties agreed to keep confidential, is sufficiently sensitive to warrant the continued sealing of the Agreement.

Nothing in this Order should be read to suggest that the mere existence of a confidentiality provision is sufficient to justify the sealing of a settlement agreement, or any other agreement between two private parties. "Confidential" and "worthy of

---

[3] A lower, good cause standard applies to matters that are only tangentially related to the merits of the case, such as many discovery issues. See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1097, 1101 (9th Cir. 2016).

sealing" are not coterminous.  Courts will and must exercise independent judgment in deciding whether a record should be sealed. See Ctr. for Auto Safety, 809 F.3d at 1097.  But the court is not aware of, nor has SATA cited, any authority for the proposition that the viability or enforceability of a confidentiality provision is in any way dependent upon a court's decision to seal or unseal information that a party agreed to keep secret.  In other words, whether a document is confidential and whether that document should be sealed are, for the most part, two distinct questions.  For example, the fact that a document "may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Kamakana, 447 F.3d at 1179.  But a desire to avoid embarrassment is precisely the type of consideration that might lead parties to enter into a confidentiality agreement.  A party who breaches such an agreement cannot escape liability for any resulting damages simply because a court later determines that the public's interest in government transparency outweighs the opposing party's interest in avoiding ignominy.

Thus, even if this Court were to agree with SATA that the Agreement here should not be sealed, Harbor Freight's counterclaim for breach of the confidentiality provision would not be moot.

**IV.  Conclusion**

For the reasons stated above, SATA'S Motion to Dismiss

//
//
//
//

8

Counterclaim is DENIED.

IT IS SO ORDERED.

Dated: September 13, 2021

DEAN D. PREGERSON
United States District Judge